Venetta et, Plaintiffs-Appellees, *v.* Venetta,
Defendant-Appellant.

Ohio Appeals, Seventh District, Trumbull County.

No. 1545. Decided February 28, 1963.

290

*Mr. John DePietro*, for plaintiffs-appellees.
*Mr. John T. Milligan*, for defendant-appellant.

BROWN, P. J.   John Vanetta died in 1956, leaving surviving him his wife, Julia; his daughter, Mrs. Rose Ann Ptaszek; and two sons, Henry and Dominic.

This action was filed in 1961 by Julia, Rose Ann and Henry against Dominic and the Standard Oil Company. Upon opening statement plaintiffs dismissed The Standard Oil Company.

The petition claims that Julia and John caused a lot of land in Trumbull County, Ohio, to be transferred to Dominic in 1943 "to hold same in trust for the family for business and investment purposes"; that defendant had thereafter promised "to return title to this property to the plaintiff, Julia Venetta," but that he has since sold the property to The Standard Oil Company for $32,000.00. Plaintiffs pray for cancellation of the deed to The Standard Oil Company, rescission, "that the property be restored to plaintiffs," and that defendant, Dominic, be required to account for all proceeds received during the period of trusteeship and restrained from disposing of the proceeds of the sale.

It clearly appears from the evidence that the property in question once owned by Julia and John, was purchased at sheriff's sale by Lewis Guarnieri in 1942 and conveyed by said Lewis Guarnieri to Dominic in July of 1946 for a sum of money

paid by John Venetta. It is quite clear that Julia had no part of this last transaction and that she and her husband were having serious marital difficulties at that time. It is clear that Dominic had just returned from service in the United States Army and had just arrived at age twenty-one.

In order to engraft an express trust on an absolute deed the declaration of trust must be contemporaneous with said deed and the evidence must be clear, certain and conclusive as to its terms and conditions. *Russell* v. *Bruer*, 64 Ohio St., 1.

The trial court found no express trust, but held that there was a constructive or resulting trust, and that the $32,000.00 received by Dominic from the sale to The Standard Oil Company should be divided among all the members of the family.

Dominic was innocent of any wrong doing in receiving the title to the property. He did not acquire title to the parcel of land by fraud, or duress, or undue influence; hence he was not a constructive trustee of the described property under the rule cited by the trial judge upon authority of Scott on Trusts, Volume 4, Section 462.2, page 3106. See also *Hasselschwert* v. *Hasselschwert*, 90 Ohio App., 331. Under another part of the same section, he might be held to be a constructive trustee of the proceeds of sale since a person who acquires property other than wrongfully and who transfers it in violation of his duty as a fiduciary is a constructive trustee of the proceeds.

But first the fiduciary relationship must be shown to exist at the time of transfer by Dominic to The Standard Oil Company.

If a trust relationship did exist at that time it had to be a purchase money resulting trust, but observe the clear rule:—

"Where a transfer of property is made to one person and the purchase price is paid by another and the transferee is a wife, child or other natural object of bounty of the person by whom the purchase price is paid, a resulting trust does not arise unless the matter manifests an intention that the transferee should not have the beneficial interest in the property." Restatement, Trusts (2d), Section 442.

If it were a purchase money resulting trust the beneficiary was the father who paid the purchase price and not the family as found by the trial court. This action would then be by his

estate and the benefits should flow to his estate and pass under his will or under the law of descent and distribution.

However, there must be clear, certain and convincing evidence to rebut the presumption of gift or advance that arises when the purchase price is paid by another and the transferee is a child of the one by whom the purchase price is paid. *Lessee of Highbee Vanzant and others* v. *The Heirs of Samuel H. Davies*, 6 Ohio St., 52; *State* v. *Oldsmobile*, 35 N. W. (2d), 525; and Restatement, Trusts (2d), Section 442.

We find no evidence rebutting the presumption of gift or advance.

Examining all of the testimony we note that the mother's testimony, which is inconsistent throughout, throws no light on the matter.

The testimony of Henry Venetta, brother of the defendant, and Mrs. Ptaszek, sister of the defendant, contains no evidence showing any act or statement of the defendant which is inconsistent with the defendant's claim that he was the absolute owner of this property free from any trust. There is some testimony that a note was executed by the defendant to his father and connected with this testimony there is a speculation that the purpose of this note was to reimburse the father for rents on this property which had been collected by the defendant. There is, however, no testimony that this was the purpose of the note, nor are the circumstances surrounding its execution and delivery explained. Even if we conclude that such a note was executed and was for this purpose, it would not be evidence that a trust existed since this evidence would be consistent with the defendant's position that the transfer was a gift or advance. The note might be evidence that the decedent's father retained some life interest in said property for himself, such as the right to demand for his own use any income which resulted from the property. One might conclude from it that the son felt a moral obligation to give his father the income upon demand. It is not evidence of trust relationship. This type of testimony can not be permitted to engraft a trust upon a deed absolute in character.

The plaintiffs' evidence consists of their own statements of the circumstances surrounding the use of the property during

the time title was in Dominic. These circumstances, including the construction and operation of the ice cream stand on the lot, are consistent with absolute ownership by the defendant.

The circumstances as related by the plaintiffs are inconsistent with the trust relationship claimed by the plaintiffs.

The trial court in its opinion notes that John supplied the consideration for the conveyance (R. 101), but places emphasis on the fact that Julia thereafter went to work and earned money to pay taxes and repairs (R. 101). We note, however, that this lot was vacant throughout the entire period that the court seems to think that Julia was working in order to keep it in repair (R. 9, 56, 65). While defendant was away in school, the tax bills were mailed to his home and the taxes paid by Julia with John's money (R. 12, 31, 67). Once a building was placed on the lot, the taxes were paid by the lessees as part of the rent (R. 56, 62, DX F). The court is wrong when he states that John paid $4,000.00 for the conveyance to his son (R. 101). There is no such testimony in the record. The revenue stamps on the deed (PX 1) indicate a price below $500.00. The court errs when he states that Rose used $3,000.00 of her own money on defendant's property (R. 101). Rose had no money (R. 62, 68), and the $3,000.00 was secured by a mortgage on defendant's property, signed by the defendant and which was paid off out of the proceeds of sale (R. 68).

The trial court found the evidence sufficient to establish a trust. This appeal is on questions of law. It is the duty of the court of appeals under these circumstances not to determine these questions de novo. *Ford* v. *Ford*, 69 Ohio Law Abs., 97, 118 N. E. (2d), 235. From this record, however, the writer opines that the finding of constructive trust errs in that it is contrary to law as assigned; that the finding that a resulting trust existed is erroneous since it is not supported by any evidence; and that the evidence on the contrary supports the presumption that the transfer was by way of gift or advancement.

The relief prayed for by the plaintiff should be denied. Judgment reversed and final judgment is rendered for the defendant.

DONAHUE, P. J., concurs.
FRANCE, J., concurs in part and dissents in part.

FRANCE, J., concurring in part and dissenting in part. I concur in so much of the opinion and judgment as directs reversal of the trial court's judgment, and dissent only from so much as directs entry of final judgment for appellant.

At the risk of some duplication, the following points in the majority opinion should be emphasized:—

First: The petition alleged a trust in land for the benefit of "the family" generally, created by plaintiff Julia and her deceased husband, John, as the owners of family property by "having such property conveyed" to Dominic, the defendant, in 1943.

Second: The evidence showed clearly that the transaction occurred in 1946, and that it concerned real estate which John, or John and Julia, had once owned but which then stood in the name of Lewis L. Guarnieri as a result of sheriff's deed in foreclosure. The evidence signally failed to develop any terms of an express trust. Not only were there no declarations in praesenti by John, but plaintiff Julia established no claim whatsoever as one of the donors of any trust. As an action for establishing an express trust it failed utterly.

The only type trust which the evidence, charitably viewed, could be considered as tending to show was a purchase money resulting trust, with father John paying all the consideration for the transaction and the deed running to Dominic who was unaware of the transaction for many months. (Testimony of Dominic on cross-examination.) While motive is not of great importance, it is strongly suggested that the land was put into Dominic's name in order to give assurance to Julia that John, her husband, would not lose it by foolish financing again or by deeding it away (R. 24, 28, 35). In any event, the taxes were paid with John's money until such obligation was imposed upon tenants under lease; leases were negotiated with tenants by John, and the leases merely mailed to Dominic for execution. When Dominic made so bold as to attempt to hold back rental payments from John during the latter's lifetime, he was made to disgorge by executing a note (R. 37, 38). When Dominic's sister, Rose, operated a business on the property, she paid the bank to reduce a mortgage given by Dominic for improvements to make the business operation possible, and

while there is some indication Dominic was to get ten percent of the business profits, he never got any such percentage (R. 30).

There was thus evidence, if believed by the trial judge, to warrant a finding of beneficial user by John which could dispel any presumption of a gift by him of the property. *Lieberman* v. *Present,* 94 Ohio App., 451; 4 Scott, Trusts, 3088, et seq.; *Fleming* v. *Donahoe,* 5 Ohio, 255.

Had the trial court confined itself to finding in favor of a purchase money resulting trust, such finding might be sustained, for a trust of this type requires no express declaration, only conduct consistent with source and application of the purchase money. 4 Scott, Trusts, 3012.

But the trial court found that *"a constructive or resulting trust"* existed. There was no evidence to support a finding that any resulting trust other than the purchase money type existed, and there was absolutely no evidence of fraudulent or misleading conduct of Dominic at the inception of the transaction, or that he acted in any unconscionable manner with regard to the land for some *thirteen years* after legal title was conveyed to him. The only evidence of unconscionable conduct occurred in 1959 when he deeded a one-half interest in the property to his wife and in 1961 when he and she not only sold the property but refused to account for the proceeds. This is not constructive trust as to the land but, if the land was already impressed with a trust, it is wrongful conduct as trustee which gives rise to liability by way of surcharge, action in accounting, or other personal judgment. See 1 Scott, Trusts, 619; 2 Scott, Trusts, 1540.

The findings of the trial court as to distribution of the trust *res* are entirely at variance with the only permissible trust finding—that of resulting trust for its deceased creator, John Venetta. Such a beneficial interest would pass either under residuary clause if testate, or as intestate share, presumably one-third to Julia and two-ninths to each child. In attempting to distribute the fund in equal shares the trial court was either trying to recreate the express trust which he had previously rejected or using an inapplicable constructive trust theory to produce and end result which he thought represented substantial justice.

The finding and judgment as entered is contrary to law and, I agree, must be reversed. But since there was evidence in the record from which, credibility factors considered, the trial judge could have found the existence of a trust in the land, I do not believe plaintiffs should now be deprived of remedy merely because he selected the wrong type trust and made improper distribution of the res. To what extent my desire to reverse and remand for new trial is influenced by sympathy for trial judges who must make decisions on the fly without aid of time for reflection and the helpful briefs we receive, I cannot honestly say. Yet, with all respect to the need for terminating litigation, where the appeal is one on law only and there is substantial evidence, if believed, in support of a theory of relief unnoted by the trial court, all doubt should be resolved in favor of remanding for new trial. The trial judge should be given the opportunity, if the cause is reparable, to repair the damage.