**FREEDMAN, Plaintiff-Appellant, v. FREEDMAN, et, Defendants-Appellees.**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 20777. Decided June 14, 1948.

Howard R. Hirsch, Cleveland, for plaintiff-appellant.
Halle, Haber, Berick, and McNulty, Cleveland, for defendants-appellees.

## OPINION

By MORGAN, J.

This is an action by Leland Sidney Freedman, a minor, by Leona Freedman, his mother and next friend, against Al Freedman and Louis E. Freedman, in which the plaintiff alleges that Al and Louis Freedman were and are holders of the legal title to certain properties located on Crawford Road and Chesterfield Avenue, in trust for plaintiff Leland Sidney Freedman, a minor.

The plaintiff prays that subsequent conveyances of the said properties be set aside and held for naught, that defendants be removed as trustees, that plaintiff be adjudged to be the owner of said lands, and for an accounting.

The defendants filed their answer in which they denied that plaintiff has or has ever had any interest in the said properties and that the defendants are now or ever were trustees of the said properties for the plaintiff.

For a second defense the defendants aver that the action is really brought by Leona Freedman and that she is the real party in interest; that she has another action pending in common pleas court in which she denies the existence of any trust in the properties and asserts that said properties belong to a corporation of which she is half owner.

In the court below, the trial judge entered a judgment for the defendants. The plaintiff appeals on law and fact.

Leland Sidney Freedman, plaintiff, is the son of Leona Freedman and Louis Freedman, who formerly were husband and wife but who are now divorced. Al and Louis Freedman are brothers.

The record discloses that in 1919 Morris and Ida Freedman, the parents of the defendants herein, purchased the Crawford Road property taking title in both their names. Sublots 9 and 16, a part of the Crawford Road property, were sold by Morris and Ida Freedman to an outsider in 1921 and after several mesne conveyances were acquired in 1930 by The Mutual Investment Company. In October, 1935, this company transferred title to said property to Leona Freedman. Sublot 17, also a part of the Crawford Road property was conveyed in 1924 by Morris to his wife, Ida Freedman. In 1931 she quit-claimed it to The Certified Realty & Improvement Company, the stock of which was in the name of Al and Leona Freedman. In October, 1933, this corporation conveyed this property to Louis Freedman and in July, 1934, Louis Freedman conveyed it to Leona Freedman.

The Chesterfield Avenue property was purchased in 1935 and was deeded to Leona Freedman.

Accordingly, in 1935, the record title to the said properties being all the properties described in the petition stood in the name of Leona Freedman.

On December 18, 1935, Leona Freedman by deed transferred all of the said Crawford Road properties to Al and Louis Freedman as "trustees for Leland Sidney Freedman (a minor) * * * for the consideration of $10.00 and other valuable considerations as love and affection, received to her full satisfaction of Louis E. Freedman and Al Freedman, trustees for Leland Sidney Freedman, under a certain trust agreement entered into and dated Dec. 1, 1935."

This deed further provided that "said parcels cannot be disposed of unless both trustees or their successors unanimously agree to said sale; one or the other cannot dispose of it individually."

The grantor, Leona Freedman, in the deed warranted said properties to be "free from all encumbrances whatsoever except a mortgage to Alphonse Cohn which said grantor and grantees assumed to pay under the trust stipulation."

Louis Freedman, as the husband of Leona, also released and quit-claimed to the said grantees his dower interest in the said properties.

On Jan. 17, 1936, Leona conveyed the Chesterfield property to "Louis E. Freedman and Al Freedman, Trustees for Leland Sidney Freedman under a certain trust agreement entered into and dated December 1, 1935."

Louis Freedman also released his right of dower in the Chesterfield Avenue property to the said grantees.

On Nov. 22, 1936, all of the said properties including the Crawford Road and Chesterfield Avenue properties were conveyed to the Nard Realty Company. The opening words of the deed are:

"Know all men by these presents that Louis E. Freedman and Al Freedman, Trustees for Leland Sidney Freedman, under a certain trust agreement entered into and dated December 19, 1935 * * *."

Then following the customary words of conveyance to The Nard Realty Company. After the description of the Crawford Road properties the following appears in the deed:

"This property is sold in accordance with Article 4 of said Trust Agreement which reads as follows: 'Said parcels cannot be disposed of unless both trustees or their successors agree to said sale; one or the other cannot dispose of it individually.' Both trustees have agreed this property is being sold to further the estate."

This deed to the Nard Realty Company is signed as follows:

"Al Freedman and Louis E. Freedman, Trustees for Leland Sidney Freedman under a certain trust agreement entered into and dated December 1, 1935."

In the deeds to Louis and Al Freedman as trustees for Leland Sidney Freedman, the grant is to the defendants "their successors and assigns." The printed word "heirs" in the deed is stricken and the word "successors" is substituted by typewritten interlineation.

In 1944 and in 1945 The Nard Realty Company in two deeds conveyed all of the said properties to Al Freedman. Al-

though in the deeds to The Nard Realty Company the trust, for Leland Sidney Freedman was recognized and recited, The Nard Realty Company in its said two deeds made no reference to the trust.

The defendant at the trial claimed that title had been conveyed by Al Freedman to his mother, Ida Freedman and a copy of the deed was offered in evidence as an exhibit. An examination of this deed discloses that it was not witnessed was not notarized and was never recorded.

At the trial the defendants offered evidence seeking to show that Leona Freedman was never the owner of the equitable interest in these properties and had no right to convey them in trust for anybody. That on the contrary, Morris and Ida Freedman were the owners at all times of these properties; that they furnished the entire consideration for them except for certain loans made by Al Freedman to his parents; that they had managed the properties until the death of Morris in 1940 and that after his death Al Freedman had managed the properties for the benefit of Ida Freedman and he had paid to her the entire net income after her husband's death.

If Ida Freedman were a party to this case she could assert her alleged equitable title and the evidence bearing on that issue would be competent. Ida Freedman, however, is not a party in this case and Al Freedman is not asserting any title derived from her. He is asserting that when property was conveyed to him in trust for a named cestui que trust and afterwards conveyed by him as a trustee for the named cestui que trust to a corporation, the corporation can re-convey the properties to him ignoring the trust and that he can defend against a claim by and for the cestui by showing equitable title in a third party, not a party in the case.

It is our opinion that such a defense is not open to the defendants in this case. The parol evidence rule denies to the defendants any right to disaffirm or to repudiate the express trust under which they derived title.

In Scott. on Trusts, Vol. 1, page 226, Sec. 38, the learned author states:

"So, also, if the instrument of transfer clearly states that the grantee is to hold the property upon a particular trust. extrinsic evidence is not admissible to show that the grantor intended that he should hold it upon a different trust." (see cases cited)

"In all these cases the effect of the admission of extrinsic evidence would be to vary the terms of the written instru-

ment; and this is what is forbidden by the parol evidence rule. It is only where there is an equitable ground for reformation or rescission, such as fraud, duress, undue influence or mistake, that such evidence is admissible. If the owner of property does not transfer it to another, but by a written instrument declares that he holds the property upon a particular trust, extrinsic evidence that he intended to hold it upon a different trust or that he did not intend to hold it upon trust, is not admissible."

On the application and effect of the parol evidence rule in Ohio we cite:

**Morris v Edwards, 1 Ohio 189; Ward v. McIntosh, 12 Oh St 231; Monnett v. Monnett, 46 Oh St 30; Fidelity & Casualty Co. v. Hartzel Bros. Co., 109 Oh St 566; Selzer v. Turske, 30 Oh Ap 15.**

In **40 O. Jur page 166, Sec. 33,** it is stated:

"The admission of parol evidence to establish an express oral trust is not considered as barring the terms of the deed but as setting up an independent agreement which is entirely consistent with it. Obviously if a purpose were set out in the deed itself, parol evidence of an express trust inconsistent therewith would be inadmissible as that would vary the terms of the written deed."

The two deeds to the defendants, above described, recite the existence of a trust in favor of the appellant. Furthermore the two deeds from appellees to the Nard Realty Company are signed by appellees as "Trustees for Leland Sidney Freedman under a certain trust agreement, entered into and dated December 1, 1935." These two deeds contain express warranties of appellees that they and their successors, as trustees are well seized of a fee simple estate. They cannot now be heard to deny both the warranties and recitals of their solemn deeds.

The defendants offered evidence that the "certain trust agreement entered into or dated December 1, 1935" which is referred to in the said deeds, never existed in fact. This is somewhat strange in view of the fact that the date of such trust agreement is at least one month before the execution of the said deeds to Al and Louis Freedman as trustees. Also, in their deed as trustees to the Nard Realty Company executed in November, 1937, it is stated:

"This property is sold in accordance with Article 4 of said trust agreement (dated December 1, 1935) which reads as follows * * *"

Then follows the provision. It seems most strange that both Al and Louis Freedman who in their deed to the Nard Realty Company assumed to quote a specific article of the trust agreement, should now assert that no such agreement ever existed. The said trust agreement was not vital to plaintiff's case inasmuch as the explicit and unambiguous terms of the deeds themselves create a trust in favor of Leland Sidney Freedman.

An explanation of some of the contradictions in the evidence in this case is furnished by the following letter which it is conceded was sent by Louis Freedman on December 4, 1940, following the death of his father, Morris Freedman, to The Union Properties Inc. The letter is as follows:

"Pursuant to our telephone conversation, I wish to state to you at this time, that my Dad, Mr. Morris Freedman, who recently passed away, had no personal or real property. As you requested of this writer, I am sending you this letter so that you can present the same to your Committee.

Therefore, it all sums up the fact that there will be no Probate of any Estate, as there is nothing to Probate.

Hoping this is the information you desired, I remain

Very truly yours<br>Louis E. Freedman<br>936 Standard Building."

In this litigation the defendants offered evidence that the only owners of both the Crawford Road and Chesterfield Avenue properties prior to his death in 1940 were Morris Freedman and his wife, Ida Freedman. Such a claim is wholly inconsistent with the statement in said letter of December 4, 1940.

A resulting trust can be fixed on a deed absolute on its face, where a third party proves that he furnished the entire consideration. No such third party is a party in this case. The terms of the deed cannot be repudiated by the grantees to whom conveyance was made only as trustees for a named beneficiary.

The defendants now contend that the deeds to Louis and Al Freedman as trustees were effective to divest Leona Freedman of title and by later mesne conveyances to lodge title in Al Freedman, but that they were ineffective to transfer the

beneficial estate to the appellant. The defendants cannot accept and adopt the deeds insofar as they effect transfers of title but reject with respect to each such deed and conveyance the terms of the trust therein specifically set forth.

The second defense in the answer sets forth that this action is brought by Leona Freedman for herself and that she is the real party in interest. That Leona Freedman has another action pending in common pleas court in which she asserts that such properties belong to a corporation of which she is a half owner. No evidence was offered or received that in this action Leona Freedman is not acting for her minor son. He is the plaintiff in this case and any inconsistent claims made by Leona Freedman in another action is not germane to the issue.

It is our view therefore, that plaintiff is entitled to a decree and the judgment in this case.

HURD, PJ, SKEEL, J, concur.