**In the Matter of Joseph Arthur CLEMENS, Bankrupt.**

**Christina E. CLEMENS, Appellant,**

**v.**

**Joseph Arthur CLEMENS, Appellee.**

**No. 72–1355.**

United States Court of Appeals, Sixth Circuit.

Dec. 20, 1972.

Richard E. Meyer, Cincinnati, Ohio, for appellant.

Arthur J. Schuh, Cincinatti, Ohio, Arthur E. Freedman, Cincinnati, Ohio, of counsel, for appellee.

Before WEICK, CELEBREZZE and MILLER, Circuit Judges.

WEICK, Circuit Judge.

Christina E. Clemens, mother of the bankrupt, has appealed from an order of the District Court which denied her petition to review an order of the Referee in Bankruptcy denying her petition to reclaim certain real property in the possession of the Trustee in Bankruptcy, the legal title to which was held in the names of the mother and son as tenants in common. The son was adjudicated bankrupt on February 9, 1970.

Donna E. Clemens, wife of the bankrupt, filed a petition to intervene and an answer to the reclamation petition, asserting that she had a dower interest in said real property, and she prayed that the Court dismiss the reclamation proceeding "and for such other relief in law and equity as well as the determination of her interest in the above described property, as the Court may find just and proper." The Referee entered an order granting her leave to intervene.

█ No one objected to the jurisdiction of the Bankruptcy Court, and all parties submitted thereto. The Referee in Bankruptcy proceeded to determine the issues and rendered his decision denying the reclamation petition.[1]

The mother perfected an appeal to this Court, but subsequently died on February 25, 1972. Her personal representative has been substituted in her place.

About ten years prior to the bankruptcy proceedings the mother desired to acquire an income-producing property. Her son investigated the local opportunities and found a four-family apartment building that was available for purchase, for $37,000. He informed his mother of this opportunity and stated to her that "it would be a good investment." At that time Mrs. Clemens had $10,000 in bonds which she had saved over the previous fifteen years. Since this amount was insufficient to cover the entire $37,000-purchase price, Mrs. Clemens contacted the Price Hill Building and Loan Company in order to secure a first mortgage loan for the $27,000-balance, her $10,000-savings to be used as the down payment.

█ The Building and Loan Company told Mrs. Clemens that because of her age and the fact that she was a widow and unemployed, it would be unable to make the loan unless she secured an accommodation maker on the note and mortgage. Mrs. Clemens obtained the consent of her son Joseph (later bankrupt), and he co-signed the note and mortgage. Because the Building and Loan Company required the son's signature on both the note and mortgage, the attorney who prepared the papers could very well have drawn the deed to both mother and son, otherwise there would have been no basis for the son to sign the mortgage.[2]

---

1. On May 20, 1970, a hearing was held on the reclamation petition before the Honorable Raymond Pellman, Referee in Bankruptcy; however, Referee Pellman withdrew from the case before a decision on the merits was reached. By consent of the parties, the transcript was submitted to the Honorable Leonard C. Gartner, Referee in Bankruptcy, who made findings of fact and conclusions of law on the basis of the testimony contained in this transcript. Thus, this Court is not required to give special deference to the findings of the Referee. We have before us the same evidence that was before the Referee and the District Judge, that is, a bare transcript unaided by observa-

tion of the demeanor of the witnesses who testified. This is, in substance, a "paper case," and the clearly erroneous test of Rule 52(a) of the Federal Rules of Civil Procedure is inapplicable. United States v. General Motors Corp., 384 U.S. 127 at 141, 86 S.Ct. 1321, 16 L.Ed.2d 415 (1966).

We agree with the District Court in disapproving of this practice.

2. The Referee who heard this case refused to receive evidence as to the reason and circumstances of the bankrupt's name on the deed. His reason was that parol evidence cannot be introduced to alter the express terms of a deed. This is clearly

Mrs. Clemens not only paid the entire down payment, but she also paid all of the monthly mortgage payments over the following ten years. In addition, she paid all real estate taxes, cost of repairs, and upkeep, and insurance on the property. Moreover, she collected the rents and the full income from the property was reflected in her income tax returns for the ten year period. Her son's only association with the property from 1960 until 1970 was when he cut the grass once or twice.

At the reclamation hearing, Mrs. Clemens contended that her son held an undivided one-half interest only in the bare legal title to the property. It was her claim that her son (and thus the Trustee who takes his interest) held the one-half interest in trust for her. Therefore, she argued, the property should not be available as an asset of the bankrupt's estate for distribution to the creditors of the bankrupt but should be turned over to her.

The Referee held that there was insufficient evidence to establish a trust. The District Court upheld this finding, stating that Ohio law requires a "contemporaneous agreement" in order to engraft a trust on a deed absolute on its face, and that there was no evidence of a contemporaneous agreement of trust in the record. We reverse.

■ A Trustee in Bankruptcy takes title to the property of the bankrupt subject not only to specific existing liens, but also to equities in favor of third persons. Zartman v. First Nat'l Bank, 216 U.S. 134, 30 S.Ct. 368, 54 L. Ed. 418 (1910); 11 U.S.C. § 110. The Trustee is not in the position of a purchaser in good faith but, in fact, he "holds about the lowest form of security." In re Alikasovich, 275 F.2d 454,

457 (6th Cir. 1960), aff'd sub nom. Lewis v. Manufacturers Nat'l Bank, 364 U.S. 603, 81 S.Ct. 347, 5 L.Ed.2d 323 (1961).

■ The existence or validity of third party equities in property held by a Trustee in Bankruptcy is determined by local state law. In re Easy Living, 407 F.2d 142 (6th Cir. 1969); Hertzberg v. Associates Discount Corp., 272 F.2d 6 (6th Cir. 1959). Therefore, we must look to the law of Ohio in order to determine the equities of Mrs. Clemens in the property interest ostensibly in the hands of the Trustee in Bankruptcy.

■ At the threshold of this investigation we note that the Referee in Bankruptcy misapprehended the law of trusts in Ohio, as it relates to this case. It is true, unquestionably, that a trust can be imposed upon a deed absolute on its face by the showing of a "contemporaneous agreement" of trust present at the time of the transfer. Hill v. Irons, 160 Ohio St. 21, 113 N.E.2d 243 (1953). However, this requirement is related only to express trusts; it does not relate to the existence or validity of an implied or resulting trust, which is what the appellant seeks to impose on the property.[3]

■ Ohio has had long and consistent recognition of a purchase money resulting trust, which trust arises when one party pays the purchase price of the property but title is taken in the name of another. Williams v. VanTuyl, 2 Ohio St. 337 (1853); Freedman v. Freedman, 83 N.E.2d 112, 52 Ohio L.Abst. 404 (1948), dismissed for want of debatable question, 150 Ohio St. 538, 83 N.E.2d 217; 53 Ohio Jur.2d 599, Trusts, Sec. 103 (1962). See also First Nat'l Bank of Cincinnati v. Tenney, 165 Ohio St. 513, at 515, 138 N.E.2d 159 at 161 (1956).

---

incorrect when a party seeks to engraft a trust on a deed which is absolute on its face. Restatement 2d, Trusts, Sec. 38(3) (1959). Nevertheless, as will be discussed below, we think the reasons adequately appear from the record.

3. For a discussion of the distinctions between express and implied trusts in Ohio, see 53 Ohio Jur. 575, Trusts, Sec. 87 (1962).

■ Therefore, absent the fact that Mrs. Clemens and the bankrupt were mother and son, respectively, there would have arisen a resulting trust in the property in favor of Mrs. Clemens because she paid in entirety the down payment and note installments. However, the fact that the bankrupt was the "natural object of bounty" of the mother changes the analysis.

> "It is the general rule [and the rule in Ohio] . . . that a conveyance on a consideration from a husband, parent, or other person, where title is taken in the name of the wife, child or other natural object of the purchaser's bounty, generally does not raise, but on the contrary rebuts, a resulting trust, and raises a presumption of a gratuitous settlement on the grantee." (53 Ohio Jur.2d 603, Trusts, Sec. 104 (1962)).

See also Lipps v. Lipps, Ohio App., 87 N.E.2d 823, 54 Ohio L.Abs. 425 (1949).

■ Of course, this presumption of a gift can be rebutted upon a showing by clear and convincing evidence that no gratuitous transfer was intended by the person who made the payments on the property. Venetta v. Venetta, Ohio App., 27 Ohio Op.2d 450, 194 N.E.2d 872 (1963); Moriarty v. Schneider, Ohio App., 29 Ohio Op.2d 404, 195 N.E.2d 126 (1963).

Moreover, when the presumption of a gift is rebutted, the exception to the purchase money resulting trust (title taken in the name of a natural object of bounty) is no longer applicable. Accordingly, the trust would again become effective. Ohio State Life Ins. Co. v. Union Properties, Inc., Ohio App., 52 N.E.2d 543, 39 Ohio L.Abs. 331 (1943), dismissed for want of a debatable question, Ohio State Life Ins. Co. v. Pecsok, 142 Ohio St. 392, 52 N.E.2d 346.[4]

We have now arrived at the actual issue in this case. Did Mrs. Clemens intend to make a gift to her son of a one-half interest in the property that she purchased?

■ ■ The record before us shows the following facts:[5] Mrs. Clemens had saved the money for the down payment over a period of fifteen years. Other than Social Security benefits, she had no source of income aside from the income

4. In the headnote to *Ohio State Life Ins. Co.* case the following language is found:
"The presumption of an advancement by a mother to her son arising when the mother purchases land and takes a deed therefor to her son, is completely rebutted by the title taken in the name of the child as trustee, *and such presumption being rebutted, the rule applicable to cases where no question arising out of the relationship of the parties is involved, is applicable.*" (Emphasis added.)
This proposition of law was taken by the Appellate Court from an early Ohio Supreme Court case, Fleming v. Donahue, 5 Ohio 255 (1931), wherein the Court stated:
"It is a general rule that when a father purchases land and takes a deed to a child, it is *prima facie* an advancement to the child, the law presuming such to be the intention of the father. *But this presumption may be rebutted, and wherever it expressly appears that the parent intended that the* *conveyance should not be considered such, then the child takes a trust estate.*" (5 Ohio at 256) (Emphasis added).

5. We are cognizant of the rule that concurrent findings of fact of a Referee in Bankruptcy and a District Judge are not to be set aside except upon a "clear demonstration of mistake." In re Cleveland Distrib. Co., 431 F.2d 965 (6th Cir. 1970); In re S. P. Nelson & Sons, Inc., 426 F.2d 235 (6th Cir. 1969), cert. denied sub nom., Cincinnati Window Cleaning Co. v. Walker, 397 U.S. 1038, 90 S.Ct. 1359, 25 L.Ed.2d 650. However, because both the Referee and the District Court misapprehended the law of trusts as it relates to this case, and because the findings were unaided by observance of the demeanor of witnesses, we are justified in searching the transcript for evidence which would shed light on the intent of Mrs. Clemens relevant to whether there was a gift. See our fn. 1.

944

received from the property. There is no indication that Mrs. Clemens was even aware that her son's name appeared on the deed up to the time of the present proceedings. Mrs. Clemens included all of the income from the property in her report of yearly gross revenues for income tax purposes; the son included none of such revenues in his gross income reported.[6] Finally, the conduct of Mrs. Clemens was that of one in complete ownership of the property; she paid all bills for real estate taxes, maintenance, repairs, insurance, etc.

As a matter of law, this is clear and convincing evidence that Mrs. Clemens intended no gift to her son with respect to the property which she had purchased for her own future security.

■ ■ Therefore, inasmuch as Mrs. Clemens paid the entire purchase price of the property and because she did not intend to make a gratuitous transfer of a one-half interest in the property to her son, the bankrupt held this interest in trust for her. Accordingly, the Trustee in Bankruptcy took the undivided one-half interest in the property subject to the outstanding equity of the appellant. The bankrupt's wife had no dower interest in the trust property.

It is therefore ordered that the judgment of the District Court be reversed and that the cause be remanded with instructions to grant the petition for reclamation and to order the Trustee in Bankruptcy to convey the title to and the possession of the real property to the persons entitled thereto under the last will and testament of Christina E. Clemens, and quiet title thereto as against the parties to the reclamation proceeding and the creditors of the bankrupt.

6. If the bankrupt actually owned a one-half interest in the property he would have had a right to one-half of the income therefrom. A *right* to income is income under Sec. 62(a) of the Internal Revenue Code, 26 U.S.C. § 61(a). Ross v. Commissioner, 169 F.2d 438 (1st Cir. 1948).

Thus, the fact that the bankrupt did not include in his return any income from the property, means one of two things: he did not own the property, or he defrauded the United States Government; we accept the former explanation.