**LIPPS, Plaintiff-Appellee, v. LIPPS et, Defendants-Appellants.**

Ohio Appeals, First District, Hamilton County.

No. 7098.   Decided June 20, 1949.

Franks & Franks, John A. Scanlon, Cincinnati, for plaintiff-appellee, Martha Lipps.

George F. Zachritz, Cincinnati, for defendant-appellant, The Central Fairmount Building & Loan Company.

J. W. Brown, Cincinnati, Albert J. Lerner, for defendant-appellant, Frank A. Lipps.

**OPINION**

By MATTHEWS, J.:

This is an appeal on law and fact in an action for partition. The plaintiff alleged in her petition that she was the legal owner of an undivided one-half of the described real estate and that the defendant Frank A. Lipps was the owner of the remaining one-half. The Central Fairmount Building and Loan Company was joined as a party defendant, and as to it, the plaintiff alleged that it claimed an interest in the premises by reason of an alleged mortgage from Frank A. Lipps and Martha B. Lipps, husband and wife, for $5400.00, dated November 2nd, 1944, recorded in Mortgage Book 1998, page 500, of the Hamilton County records, which mortgage the plaintiff alleged she did not sign and of which she knew nothing until a short time before filing her petition for partition. In addition to praying for partition, the plaintiff asked that the mortgage be declared null and void as to her and that her title be quieted as against said mortgage.

By answer and cross-petition, the defendant, The Central Fairmount Building and Loan Company, denied the allegations of the petition and affirmatively alleged that persons representing themselves as Frank A. Lipps and Martha B. Lipps executed the mortgage referred to in the plaintiff's petition, that it was duly recorded as alleged, that it was a purchase money mortgage, that it created a first and best lien upon the premises described to secure an indebtedness of $5400.00, of which a balance of $4305.65 remained due and owing at the time the answer was filed. The prayer was that the mortgage be found to be a first and best lien upon the premises and for all other proper relief.

The defendant, Frank A. Lipps, by answer denied that the plaintiff had any interest in the premises and by cross-petition alleged that he purchased the premises from Conradi and the two Leimans, that through mutual mistake the grantors delivered to him a deed to the premises wherein he and the plaintiff were named as grantees, contrary to the intention of the parties to convey the premises to him and one Genevieve Jeffries (a woman with whom he was living in adultery); that the plaintiff paid no part of the purchase price, had no knowledge of the transaction at the time and that there was no delivery of the deed to her. He prayed that the deed "be corrected so as to make it a conveyance to Frank A. Lipps and Genevieve Jeffries; that the plaintiff be barred of all interest in said premises and for all other relief."

Now what is the nature of the case set forth in the cross-petition of Frank A. Lipps?

It is alleged that the deed did not carry out the intention of the parties thereto and in that respect the cross-petition takes on the aspect of an action for reformation, but if such was the purpose of the pleader, his purpose fails because such an action would be against the grantors, and they are not parties to the action. The cross-petition cannot be sustained as an action to enforce an express trust against the plaintiff, because the allegations expressly contradict the thought of an intention to create a trust. The only other theory is that the purpose was to state a cause of action to enforce an implied trust against the plaintiff, resulting from her acceptance of the title under the circumstances. The burden of proving the circumstances from which the trust is implied rests upon the defendant, Frank A. Lipps. When one person pays the purchase price and the title is taken in the name of another, and such persons are strangers to one another, equity presumes an intent to create a trust in favor of the person paying the purchase price in the absence of evidence to the contrary. However, this presumption does not arise when it is a husband who pays the purchase price and the title is taken in the name of his wife. The opposite presumption arises under such circumstances. In **40 O. Jur., 279** and **280**, it is said:

"It is a rule of almost equal universality of application that the presumption which gives rise to a resulting trust, as discussed in the last section, does not obtain where the payor of the purchase price takes title to the property in the name of a near relative. On the contrary, in this fact situation another presumption is entertained, viz., that of gift or advancement. Thus, in the following situations there is a presumption of a gift, and not of a resulting trust: Where a husband takes title in the name of his wife:"

And at page 282 it is stated that: "The burden of proof is upon the one alleging that the intent was not to make a gift and the proof must be clear and convincing. Such presumption is overcome by proof of an oral agreement by the grantee at the time of the conveyance that he would reconvey to the payor, or a recital in a deed rebutting the purpose to give, or a declaration, **at the time of the transaction,** by the payor of his purpose. Subsequent declarations by payor are not admissible, but subsequent declarations by grantee are

competent to show that a trust was intended. Possession of the property by the payor does not rebut the presumption of a gift: * * *"

See, also, 54 Am. Jur., 160.

We turn to the evidence to determine what evidence was introduced tending to prove that a trust was intended. While there is some evidence that the defendant, Frank A. Lipps, obtained some money from the sale of an automobile, the title to which was in plaintiff's name, there is no evidence tracing this money into the fund used to purchase the real estate, and we think the evidence shows that Frank A. Lipps furnished $600.00 to apply on the purchase price and arranged through the real estate broker with the defendant Building Association to loan the balance of $5400.00, secured by mortgage upon the premises. As already noted, this creates no inference or presumption of a trust in favor of Frank A. Lipps or Genevieve Jeffries in the undivided one-half the legal title to which was conveyed to the plaintiff by the deed.

Frank A. Lipps testified that his intention was to have himself and Genevieve Jeffries named as grantees in the deed. Neither he nor any other witness testified to any statement of such intent to any one at the time of this conveyance. His secret, undisclosed intent was neither competent nor material.

The evidence shows that Frank A. Lipps left to the real estate broker the task of arranging for the deed and the mortgage. It shows that the real estate broker asked Frank A. Lipps for the name of his wife and he told him that it was Martha B. Lipps, and the broker, we infer, communicated this name to the scrivener, who drafted this deed and mortgage. It is true that the evidence shows that Genevieve Jeffries signed the name "Martha B. Lipps" to the mortgage, but that has no tendency to prove that the scrivener intended that Genevieve Jeffries should be a grantee in the deed or a mortgagor. Beyond question, it was the lawful wife and not the paramour that was intended, and the fact that Frank A. Lipps conspired with Genevieve Jeffries to forge the name of Martha B. Lipps tends to show that he knew it.

The only other significant fact is that Frank A. Lipps had possession of this deed, knowing that his wife was named as co-grantee with him, for three or more years and never took any action to have the mistake, which he now claims, corrected Such laches is not consistent with the claim that he now makes.

On the whole evidence we conclude that the defendant, Frank A. Lipps has failed to prove that he is entitled to any of the relief prayed for in his cross-petition.

The remaining question relates to the relative rights of the plaintiff and the defendant, The Central Fairmount Building and Loan Company. The plaintiff claims that as she did not sign the mortgage (her name having been forged thereto) her undivided one-half is not subject to the lien of the mortgage and the mortgage cannot subject it to the payment of the debt created by its advancement of $5400.00 of the purchase price at the time of the property was purchased and the title transferred to her, and this, notwithstanding she occupied the position of a donee. In **27 O. Jur., 259**, it is stated that: "A purchase money mortgage is a mortgage given for the purchase money concurrently with the receipt of the deed, and may be given either to the vendor of the property or to some third person who furnishes the purchase money."

While it is true that the mortgage unaided by equitable principles does not create a lien as against the plaintiff who did not sign it, the fact that it was executed at the same time as the deed shows that there was no intent to convey a title free of the incumbrance to secure the purchase price. There was no intent to convey to the plaintiff an unincumbered title. Her donor—Frank A. Lipps—had no such unincumbered title to convey to her. It is a general principle running through the law that no one can convey a better title than he himself has and that a transferee obtains no better title than his transferor had, and where an attempt is made to transfer a greater title than the transferor has, the real owner can pursue the property until it reaches the hands of an innocent purchaser for value. Every principle of equity would limit her title to that of her donor, especially as against an innocent grantee who had advanced money in good faith.

This principle has had frequent application in Ohio to the claim of the widow to dower in premises subject to a purchase money mortgage which she had not signed, or to a vendor's lien. In **14 O. Jur., 657**, it is said:

"The right of dower is subject to a purchase-money mortgage given by the consort at the time of receiving the deed. It has been said that a purchase-money mortgage is superior to a claim of dower, even though the mortgage is not signed by the wife, because the debt is a higher claim than the claim of dower. The technical seisin of the consort does not confer upon the other spouse a contingent right of dower in the

land, as against those deriving title at judicial sale of the land on the mortgage, although he or she did not join in executing the mortgage."

And at 668, it is stated that: "A vendor's lien is superior to the right of dower of the vendee's consort."

In **Anketel et al., v. Converse et al., 17 Oh St, 11,** it was held, as stated in the first paragraph of the syllabus, that:

"A vendor's lien for purchase money is not extinguished by his taking a mortgage on the land sold, to secure its payment."

And as the law is that the mortgage to a third person who advances the money to finance the purchase has the attributes of a purchase-money mortgage, we can see no logical reason for not holding that such person should not have a vendor's lien to secure the repayment of the purchase money advanced by him under the same circumstances that would give a vendor such a lien.

There are cases holding or implying that a vendor's lien is non-assignable, and there is strong criticism of such a rule if it exists. In this case we are not required to decide that question. We are required to decide in this case whether the plaintiff, who has taken the legal title to this real estate as a gratuitous grantee, must hold that title subject to equities existing at the time the legal itle was cast upon her.

**Ogle v. Ogle, 41 Oh St, 359,** involved the application of principles which, we think, are equally applicable here. That case arose at a time when a married woman did not have the capacity to execute a mortgage unless her husband joined. The syllabus sufficiently sets forth the facts and the decision, as follows:

"A vendor, supposing that a woman whose husband was not living with her, was unmarried, sold her a tract of land and took notes and a mortgage back for a part of the purchase money.

"In an action by an assignee of the notes, Held: The deed and void mortgage are one transaction and subsequent purchasers, with notice, took title in trust for the payment of the mortgage notes."

Ogle v. Ogle, supra, was followed in Hatry v. P. & Y. Co., 1 C. C. 426. In applying the principle of Ogle v. Ogle in that case the court said at 443 and 444:

"That is a pretty broad case, and is to be commended as breaking away from the totally indefensible (upon principle) doctrine that a vendor of land cannot sell his lien thereon, although it is property, as much as the notes which it secures, and frequently is the only thing which gives value to such notes. Call it a vendor's lien, and Ogle could not enforce it; but call it a trust, and he may. In equity the vendee holds the lands in trust for the vendor, to the extent of the unpaid purchase-money. The lien arises out of, and is founded upon, an equitable trust. 31 Oh St, 504, 505. It would seem as if the right to relief in such cases should depend upon the facts and not upon a name. Is it material whether such right be denominated a vendor's lien, a trust, or (properly) an equitable lien? The principle established in the Ogle case, applies, it seems to us, to the case at bar, and justifies us in holding that Seelye's representative has an equitable lien upon this railroad; and if so, it is good undoubtedly against all parties with notice."

We are not overlooking the holding in **Mitchell v. Ryan,** **3 Oh St, 377,** that where a grantor executes a deed and has it recorded, and the grant is plainly beneficial to the grantee, its acceptance by the grantee is presumed, in the absence of proof to the contrary, but that case also holds that the presumption is rebutted by actual dissent. Now it is true that the plaintiff knew nothing of the execution of either the deed or mortgage at the time of their execution, or until after she had sued for divorce and, when she discovered the facts, she dismissed her divorce action, and instituted this action in partition. At that time, she was privileged to reject the title, but with full knowledge of the mortgage and the state of the title, she chose to accept it. On plainest principles of equity, she cannot acquire a better or greater title than her donor had.

So, in the case at bar, we hold upon equitable principles the plaintiff holds the legal title to her undivided one-half of this real estate, subject to a charge or lien, or in trust, to secure the payment of the balance due The Central Fairmount Building & Loan Company upon its purchase-money mortgage, and that her right in said property is one-half of the residue after payment of the balance due upon the purchase price.

After this opinion was announced our attention was called to the fact that the grantors in this deed had been made parties to this action by entry after the institution of the

action. However, that fact would not change our conclusion as there was no evidence of any agreement to convey to Genevieve Jeffries as a co-grantee to which the deed could be made to conform.

A decree may be presented in accordance with this opinion.

ROSS, PJ, HILDEBRANT & MATTHEWS, JJ, concur in syllabus, opinion & judgment.